HENRY S. QUICK, Respondent, *v.* ALFRED E. CLEGG and Another, Appellants.

First Department, December 23, 1927.

Sales — contract of sale of corporate stock — final contract stipulated that purchaser would pay in addition to agreed price " all Income and Excess Profits Taxes  *  *  *  which are assessed  *  *  *  by reason of the sale "— preliminary agreement stipulated that " vendee will pay any income tax that the vendor may be assessed for the year  *  *  *  on the proceeds of the sale "— two agreements are not inconsistent — purchaser liable to pay any extra income taxes arising because of sale of stock in question.

The plaintiff sold certain shares of stock at a stipulated price under an agreement which provided that the purchaser would " assume and pay all Income and Excess Profits Taxes for the year 1918, which are assessed against the party of the first part by reason of the sale of the above mentioned stock."  A preliminary agreement stipulated that " the vendee will pay any income tax that the vendor may be assessed for the year  *  *  *  on the proceeds of the sale."  Whether or not the first agreement was binding and alone to be considered is immaterial, for the two agreements are not in conflict on the question as to the amount of tax which the purchaser agreed to pay.  The agreements properly construed mean that the purchaser would pay all income taxes over and above those taxes which the plaintiff would have been obliged to pay had the stock not been sold, and they cannot be construed to mean that the purchaser agreed to pay such taxes as the plaintiff would have to pay if he had no income in 1918 other than his profit upon the sale of the stock.

It is no defense to the action that the construction given leaves uncertain the amount to be paid, for that is the very purpose of the agreement and the amount to be paid may be made certain by computation.

McAvoy and O'MALLEY, JJ., dissent, with opinion.

APPEAL by the defendants from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 21st day of March, 1927.

*Herbert Noble* of counsel [*Noble, Morgan & Scammell,* attorneys], for the appellants.

*George F. Handel,* for the respondent.

MARTIN, J.   On December 4, 1918, plaintiff and the defendant Clegg executed a written agreement whereby Quick agreed to sell to the defendant Clegg 1,800 shares of stock of the Kerr Steamship Company for the sum of $430,000 and the further consideration that the purchaser was to pay certain income taxes of the seller. This agreement also contained a clause providing for a further writing or " agreement " relating to the taxes to be paid by the defendant Clegg.   The agreement was executed by the parties at the time of the delivery of the stock, December 31, 1918, and its execution is admitted by the pleadings.   The defendant Kerr is sued as a guarantor of the performance of the contract on the part of Clegg.   The fact of Kerr's guaranty is not disputed.   The construction of the clause relating to the payment of tax was the only question before the trial court.

The sole question, therefore, involved on this appeal is one of legal interpretation of a certain agreement or agreements entered into between the plaintiff as vendor of certain shares of stock, and Alfred E. Clegg, the vendee.

The provision in the agreement of December 31, 1918, which is the one before us on this appeal, is not technical in form, nor ambiguous in meaning.   It provides as follows: " That he [Clegg] will assume and pay all Income and Excess Profits Taxes for the year 1918 which are assessed against the party of the first part by reason of the sale of the above-mentioned stock."

The writing of December 4, 1918, had provided that " *    *    * the vendee will pay any income tax that the vendor may be assessed for the year    *   *   *   on the proceeds of the sale *   *   *." Appellants contend that the first agreement was binding and that it alone and not the final agreement is to be construed.   It seems to us that the agreement of December 4, 1918, is not necessarily in conflict, on this point, with the agreement of December 31, 1918.   The tax which the vendor would be required to pay " on the proceeds of the sale " is, from any fair point of view, the increase of his tax as a result of receiving the proceeds of the sale.   From no angle, moreover, was the tax referred to a tax on the proceeds of the sale.   It was a tax on the seller's income; and the purpose of the agreement is apparent.

Respondent contends that this is clearly a provision that the defendants will pay all taxes over and above those taxes plaintiff would have been obliged to pay had the stock not been sold.   The defendant Clegg contends that the agreement is to pay such taxes as plaintiff would have to pay if he had no income in 1918 other than his profit from the sale of the stock.   If the defendant applied to these words a meaning they would not ordinarily bear, or had

in his mind a hidden or secret intent, he should not now be permitted to benefit thereby.

At the Trial Term it was held that the parties intended the seller to have and retain, without deduction for payment of tax, the profit which the sale gave him. This is a natural construction. He was to be assured by this agreement of a certain profit irrespective of the amount of tax. His profit was to be fixed and certain. As the trial justice points out in his opinion, defendants would have received the benefit of any deduction for a net loss in 1918 outside of this transaction.

The appellants base their argument to a considerable extent on an English case referred to at length in the opinion in this case at Trial Term. (See *Union Theatres, Ltd.,* v. *Marrickville Bldgs., Ltd.,* 35 C. L. R. [Australia] 171.) That was an action between landlord and tenant in which it was held that the tenant's obligation to pay income tax in relation to the rent was confined to such tax as would result from the landlord's receiving the rent. The difference in circumstances and in the language of the agreements is so great that the case cited would seem unimportant, especially as no fundamental principle was involved, but the mere construction of a particular contract.

Appellants say the construction given the agreement at Trial Term leaves uncertain the amount to be paid. The purpose of the agreement was to meet such uncertainty. Otherwise a definite amount could have been fixed in advance and inserted in the agreement.

The very purpose of the agreement, as pointed out, was to make certain the net amount of profit the seller of the stock was to receive, irrespective of the amount of tax.

We are of the opinion that the judgment is correct and should be affirmed, with costs.

Dowling, P. J., and Finch, J., concur; McAvoy and O'Malley, JJ., dissent.

McAvoy, J. (dissenting). The agreement which the defendant made was: " That he [Clegg] will assume and pay all Income and Excess Profits Taxes for the year 1918 which are assessed against the party of the first part by reason of the sale of the above-mentioned stock."

If plaintiff's own income is added to the profit made on the sale, his income tax is lifted to a sum much more than he would have had to pay on that same income alone if there were no sale.

The respondent's contention is that the appellants are liable for all income taxes assessed against him over and above $6,166.20,

this latter sum being the income tax computed on his income exclusive of income from the sale of the stock at the lowest tax rates.

The appellants' contention is that they are liable for respondent's income tax computed on the profit on this sale as if this were respondent's only income.

The obvious conclusion from the instrument of December thirty-first, it appears to us, is that the appellants' contention is the one which ought to be adopted. None of the respondent's other income was assessed at all by reason of the sale. It would have been assessed if there had been no sale and its amount, exemptions, deductions and other affecting causes could not have been known to the party purchaser, unless disclosed by the seller. That a definite sum of liability for the tax was contemplated is evidenced by the December fourth instrument which prescribes a payment of " any income tax that the vendor may be assessed for the year  *  *  *  on the proceeds of the sale and purchase herein contemplated  *  *  *." While it is not accurate to describe the tax as " on the proceeds of the sale," since the tax is levied only on the profit thereon, yet the sense intended is apparent from the context itself.

It is argued that if there were a loss in plaintiff's income from other sources it would result in a deduction of the tax assessed on the profit from the proceeds of the sale and that, therefore, the converse of the addition of plaintiff's other income must be considered in determining the amount of liability under the agreements. This has a plausible guise, but its merits are less than its appearance indicates.

The ground for limiting liability to the lesser sum, in the event of loss, is not that the tax on the profits from the sale and by reason thereof would be thus computed with a view to plaintiff's other income, but rests on a basis wholly irrelevant to that hypothesis — that is, that then the lesser sum would be the levy *assessed* against plaintiff, and according to the covenants the defendants are liable only for the tax *assessed* against plaintiff " on the proceeds of the sale " and the assessment would be at the reduced amount. The tax on the profit from the proceeds of the sale was not intended to be affected by extraneous sources of income not ascertainable by the covenantor at the time of his agreement which might largely enhance his obligation — a loss would diminish it and, therefore, be unobjectionable — but the tax was to be that assessed by reason of the subject-matter, *i. e.*, the profit sum of the sale, not that assessed on another sum affected by other factors. The covenant is as we construe it that the

promisor will pay the amount of income tax that would be assessed against the promisee in respect of the profits of the sale, as though he had no other income.

The judgment should be modified by reducing the amount thereof to $12,850.44, the amount admittedly owed by defendants to plaintiff, and as so modified affirmed, with costs of this appeal to the appellants.

O'MALLEY, J., concurs.

Judgment affirmed, with costs.